## BARNWELL v. MARION.

1. APPEAL.—Point not presented to nor considered by Circuit Judge on demurrer, will not be considered on appeal.

2. PLEADINGS—DEMURRER—PRACTICE.—COMPLAINT which alleges that A as guardian of B holds a bond as assignee, upon demurrer cannot be attacked because there is no allegation of such appointment.

3. PARTIES—GUARDIAN AND WARD—FORECLOSURE.—A GUARDIAN to whom a bond secured by a mortgage has been assigned *eo nomine,* may maintain an action of foreclosure on the mortgage without joining his ward with him. 21 Stat., 816; 22 Stat., 194, *construed. Moore* v. *Hood,* 9 Rich. Eq., 311; *Long* v. *Cason,* 4 Rich. Eq., 60; *McDuffie* v. *McIntyre,* 11 S. C., 551, *distinguished from this.*

4. REMEDIES—CAUSE OF ACTION.—Foreclosure by all the assignees of bonds secured by a mortgage is compliance with the provision in the bond that the trustee (mortgagee) must foreclose upon *demand in writing* by a majority in interest of the holders of such bonds.

Before BUCHANAN, J., Charleston, April, 1898. Affirmed.

Foreclosure by Joseph W. Barnwell, trustee and individually, and as agent and guardian, and Ann Josepha Wilson and Ellen F. Hayne *v.* Sophia Francis Shepherd Marion. From order overruling demurrers, defendant appeals.

*Messrs. Bryan & Bryan,* for appellant, cite: *No valid sale in foreclosure without judgment:* 21 Stat., 816. *Such judgment can only be entered by parties in interest, the minors:* 9 Rich. Eq., 324. *Under Code, general guardian cannot represent minor in suit:* Code, 137; 11 S. C., 551; 17 S. C., 439. *Jurisdiction of person of minor can only be obtained by guardian ad litem:* 51 S. C., 405; 53 S. C., 461; 64 Cal., 593; 87 Id., 530; 30 Pac. R., 558; 11 B. Mon., 332; 12 Mass., 16.

*Messrs. Langdon Cheves* and *Joseph W. Barnwell,* contra, cite: *Suits for recovery of special personal or real property of the ward must be brought in his name:* 18 S. C., 123; 3 Hill, 338. *In New York, a guardian is a trustee of an ex-*

*près trust:* 56 Barb., 197. *The contrary in California:* 32 Cal., 113; 95 Cal., 454. *North Carolina Code is like ours:* N. C. Code, 177, 179; 64 N. C., 673; 66 N. C., 334. *Debtor cannot deny fiduciary capacity:* 54 Mich., 541; 9 Ind., 260; 4 Scarm., 325; 6 Minn., 3; 29 Mo., 456. *Payment to guardian acquits debtor:* 1 S. C., 383. *A mortgagee, who is trustee, may sue alone:* 93 U. S., 155. *Omission of descriptive words in caption not fatal to Com.:* 13 Kan., 399. *Failure to allege appointment of guardian cannot be questioned by demurrer:* 50 Mich., 541; 32 S. C., 598; 20 S. C., 177.

Feb. 14, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. It appears from the allegations of the complaint that the defendant, Mrs. Marion, on the 22d day of May, 1894, duly executed her bonds, six in number, payable to Joseph W. Barnwell, trustee, for the respective amounts mentioned in the complaint, aggregating in the whole the sum of $40,000; and to secure the payment of the said bonds, the defendant, on the same day, duly executed her mortgage on the real estate described in the complaint, to the said Barnwell, trustee as aforesaid; that one of said bonds, to wit: for the sum of $17,000, was assigned by said Joseph W. Barnwell, trustee, to said Joseph W. Barnwell, as guardian of the minor children of N. B. Barnwell; another, to wit: for the sum of $8,666.67, was assigned to the plaintiff, Ann Josepha Wilson; another, to wit: for the sum of $6,933.33, to S. L. Howard and said Joseph W. Barnwell, as trustee of Anna L. Walker and child; and said S. L. Howard has died, leaving said Joseph W. Barnwell sole surviving trustee; another, to wit: for the sum of $4,000, was assigned to said Joseph W. Barnwell as agent; another, to wit: for the sum of $3,000, was assigned to the plaintiff, Ellen F. Hayne; and the remaining bond, for the sum of $400, was assigned to said Joseph W. Barnwell, individually; and that the defendant has made default in the payment of the said bonds according to their tenor and

effect.   The prayer of the complaint is that an account may be taken of the amount due on said bonds, and that judgment may be entered against defendant for the amount found due, including the amount paid out by said trustee for taxes on the mortgaged premises, with interest thereon, and counsel fees and commissions of said trustee; and that, in case the amount so found to be due shall not be forthwith paid, that the real estate now subject to said mortgage be sold, and the proceeds applied to the amount so found due; and that the defendant, and all persons claiming under her since the commencement of this action, be barred and forever foreclosed of all equity of redemption in said premises.   The mortgage, amongst other covenants, contains the following: "that in case of default in the payment of the principal or interest of said bonds, or any part thereof, said trustee should have the power to institute proceedings for the foreclosure of said mortgage, and that, upon the demand in writing of the assignee of a majority in interest of the bonds secured by said mortgage, outstanding at the time of said demand, said trustee should, upon being secured his proper costs, charges and expenses, forthwith institute such proceedings," and the complaint contains the following allegations: "That all of the assignees of said bonds have demanded that suit be brought for the foreclosure and collection of the amount due upon said bonds and mortgage, and have become parties to this suit in order to signify their consent and demand that the same be brought by said trustee, Joseph W. Barnwell."

To this complaint the defendant demurred; because "it appears upon the face of the complaint that there is a defect of parties plaintiff, in the omission of the minor children of N. B. Barnwell as plaintiffs."   At the argument she demurred orally, because the complaint does not state facts sufficient to constitute a cause of action; and for a specification of the deficiencies in the complaint, the following are stated in accordance with the Rule of Court: 1. Because the mortgage is alleged to have been made to Joseph W. Barnwell, trustee, whereas the complaint is not brought by

15—54

Joseph W. Barnwell *as* trustee.   2. Because there is no alle-
gation in the complaint of demand, *in writing,* from the as-
signees of a majority in interest of the bonds secured by the
mortgage, upon the said trustee, to institute proceedings for
foreclosure of said mortgage.   These demurrers were over-
ruled by his Honor, Judge Buchanan, and from his judg-
ment to that effect the defendant appeals upon the several
exceptions set out in the record.   These exceptions raise the
following questions :  1st. Whether there was a defect of par-
ties plaintiff in the omission of the minor children of N. B.
Barnwell as plaintiffs.   2d. Whether the fact that the com-
plaint is not brought by Joseph W. Barnwell *as* trustee, is
fatal on demurrer.   3d. Whether the absence of any allega-
tion that a demand *in writing,* from the assignees of a ma-
jority in interest of the bonds secured by the mortgage, had
been made for the bringing of this action, is fatal on demur-
rer.   4th. Whether the absence of any allegation in the
complaint of the appointment of Joseph W. Barnwell as
guardian of the minor children of N. B. Barnwell, is fatal to
the complaint on demurrer.

The point raised by the second question having been very
properly abandoned on the argument here, need not be fur-
ther considered.   And inasmuch as the point in-
volved in the fourth question was not raised by either
of the demurrers in the Court below, was not, so far
as appears, either considered or determined by the Circuit
Judge, it is not properly before us for review.   We may
add, however, that even if such point were properly brought
before us, we do not think it could be sustained, for the
action is based upon a bond secured by a mortgage,
which is practically payable to Joseph W. Barnwell,
as guardian of the minor children of N. B. Barnwell;
and hence no allegation or proof of his appointment as such
guardian was necessary, for the demurrer admits the allega-
tion that the bond had been assigned to Joseph W. Barn-
well, as guardian of the minor children of N. B. Barnwell,
and thus the defendant would be estopped from raising any

issue as to that matter—*Woodberry* v. *Dye,* 10 Rich., 31.

The first and third questions as above stated, therefore, only remain to be considered and determined. As to the first question, to wit: Whether the minor children of N. B. Barnwell are necessary parties, we do not see how there can be doubt, in view of the express provisions of the Code, as they have been construed in several of our cases. The bond and mortgage upon which this action is based are not before us; but in the absence of any evidence to the contrary, we must assume that they are in the usual form—that is to say, that the bond is made payable to Joseph W. Barnwell, trustee, his executors, administrators or assignees, and that the mortgage was drawn accordingly. When, therefore, the bond for $17,000 was assigned to Joseph W. Barnwell, as guardian of the minor children of N. B. Barnwell, the practical, legal effect, so far as the question under consideration is concerned, was the same as if the bond of defendant had, originally, been made payable to Joseph W. Barnwell, as guardian of the minor children of N. B. Barnwell, and to an action for the enforcement of the contract, evidence by such bond and mortgage, the minor children of N. B. Barnwell were not necessary parties. Sec. 132 of the Code provides that "Every action must be prosecuted in the name of the real party in interest, *except* as otherwise provided in sec. 134," and the provision in sec. 134 is that "* * * a trustee of an express trust * * * may sue, *without joining with him the person for whose benefit the action is prosecuted;*" and then proceeds to declare that "a trustee of an express trust, within the meaning of this section, *shall* be construed to include a person with whom, or in whose name, a contract is made for the benefit of another" (italics ours). As is said in *Johnson* v. *Dawkins,* 20 S. C., at page 532, the effect of these two sections, when construed together, is the same as if the statutory provision read as follows: "Either the real party in interest or the party with whom a contract is made for another, may institute an action on such contract." To the same

effect, see *Billings* v. *Williamson,* 6 S. C., 119; recognized and followed in *Carroll* v. *Still,* 13 S. C., 430. There can be no doubt that the contract here sought to be enforced was made with Joseph W. Barnwell, as guardian of the minor children of N. B. Barnwell, in his name as such, for the benefit of said minor children; and hence, under the express terms of the Code, as construed in the cases above cited, he may maintain this action "without joining with him the person for whose benefit the action is prosecuted." To same effect see, also, 9 Ency. of Plead. & Prac., 932, where it is said: "In some certain cases a guardian may maintain an action, suit or other proceeding in his own name * * * or when the action is on an express contract made with him in the course of the guardianship, as when the action is on a promissory note or other commercial paper, made to him, *eo nomine,* or on securities assigned to or taken by the guardian in his own name." This, it seems to us, is conclusive of the first question, and there was, therefore, no error in overruling the demurrer for defect of parties. The provisions of the Code, prescribing how a guardian *ad litem* of an infant must be appointed, which have been relied upon in the argument, do not relate to or even touch the question as to when a minor is a necessary party to an action. They only prescribe the manner in which a minor must be made a party, when it is necessary that he should be made a party. Hence, neither those provisions nor the cases cited to show how strictly such provisions must be followed, are pertinent to the present inquiry. Our only concern here is whether the minor children of N. B. Barnwell are necessary parties to this action—not as to *how* they should be made parties. Until it is shown that they are necessary parties, the inquiry as to how they should be made parties, in a case where it was necessary to make them such, is wholly speculative, and, therefore, need not be pursued, nor are we able to perceive what application the act approved the 5th of January, 1895—21 Stat., 816, as amended by the act of 9th of March, 1896, 22 Stat., 194, which has been cited by the counsel for

appellant—has to the present case. The sole objects of that act, as we understand it, were: 1st. To forbid the sale of a mortgaged premises by the mortgagee, under a power of sale contained in the mortgage (commonly called a Scotch mortgage), until the amount of the mortgage debt has been judicially ascertained, or such amount has been admitted, in writing, by the mortgagor, and entered upon the records of the register of mesne conveyances. 2d. To change the rule, as previously declared in *Warren* v. *Raymond,* 12 S. C., 9; *Parr* v. *Lindler,* 40 S. C., 193, and *Cook* v. *Jennings,* 40 S. C., 204, whereby no judgment, in an action for foreclosure of a mortgage, could be entered for the amount of the mortgage debt, or any deficiency thereof, until after a sale of the mortgaged premises, and an application of the proceeds thereof to the mortgage debt; when, if any deficiency appeared, a judgment might then be entered and execution issued for such deficiency; so that now, the Court may, in action for foreclosure, render judgment for the amount of the mortgage debt, and at the same time direct a sale of the mortgaged premises; the officer making such sale being required to credit upon such judgment the proceeds of the sale. We do not see why a guardian, in a case like the present, where the bond and mortgage has been assigned to him as guardian, may not maintain an action in his own name as guardian, without joining with him his ward, for the foreclosure of the mortgage, and at the same time that he obtains an order for the sale of the mortgaged premises, also recover a judgment for the amount of the mortgage debt, as provided for in the act just referred to, just as he could recover judgment for the amount due on an ordinary promissory note, unsecured by a mortgage, which was made payable to him as guardian, or transferred to him as such. Cases have been cited, which arose and were decided prior to the adoption of the Code of Civil Procedure, for the purpose of showing that a ward is a necessary party to an action for foreclosure of a mortgage of real estate, of which the ward is the real and beneficial owner. The case which seems to be

mainly relied upon is *Moore* v. *Hood,* 9 Rich. Eq., 311.    In
that case the action was brought against the guardian of
plaintiffs, who had been appointed as such by the proper
tribunal in North Carolina, but had subsequently removed
to this State, for the purpose of obtaining an account of the
full value of certain slaves belonging to the wards.    It was
contended by the guardian that he was not liable to account,
because the slaves had been sold under an order of a Court
in North Carolina, having jurisdiction of the subject mat-
ter, and that the guardian had already accounted for the pro-
ceeds of such sale.    It appeared, however, that this order of
sale was obtained under an *ex parte* proceeding by the guar-
dian, to which the wards were not made parties, and it was
claimed that the slaves were sold for much less than their
real value, though not through any fault of the guardian.
It was held that the wards were necessary parties
to any proceeding for the sale of their property,
and hence the guardian was liable to account for
the full value of the slaves sold under this *ex
parte* proceeding.    This was based upon the doctrine that
the legal title to the chattels belonging to the wards was not
in the guardian but in the wards, and hence the sale of these
slaves, made under an order obtained in an *ex parte* proceed-
ing, did not divest the legal title of the wards; for the sale
made under such an *ex parte* proceeding was not materially
distinguishable from a sale made by the guardian of his own
motion, which is voidable at the option of the wards.    How
that case affects our present inquiry it is somewhat difficult
to perceive.    The case of *Long* v. *Cason,* 4 Rich. Eq., 60,
has likewise been referred to, mainly for the purpose of
showing that the legal title to a ward's chattels is not in the
guardian—a point which we do not deem it necessary to
consider.    But that very case evidently implies that a guar-
dian may institute an action in his own name for the recov-
ery of the amount due on a chose in action belonging to the
ward's estate; for in that case, one of the points decided was
that a ward was barred by the statute of limitations from the

recovery of a claim which her guardian had failed to prose-
cute within the statutory period.   A. D. Wardlaw, Ch., in
delivering the opinion of the Court, used this language: "I
apprehend that a guardian has plenary right to receive
money coming to his ward, and to presecute, compound and
acquit any debt or liability to the ward.   He always acts
under responsibility to his ward for the faithful and judi-
cious performance of his trust, and is liable for any fraud,
gross negligence or other breach of trust."   Even Dargan,
Ch., in his separate opinion, concurring *in the result,* but
carefully guarding himself against being committed to the
doctrine that a guardian is possessed of any legal estate in his
ward's chattels or *choses in action,* admits that the guardian,
in a case like the one now before the Court, may bring the
action in his own name.   For he says: "If a guardian
should take a note or other security, payable to himself, for
the rents and profits of his ward's real or personal estate, or
calling in the ward's *choses,* should reinvest them in other
securities payable to himself, in these and similar cases I
should have no hesitation in saying that the statute of limi-
tations would run against the guardian, and through the
guardian against the infant ward; for the reason that the
legal estate in such securities was vested in the guardian."
This necessarily implies that he thought the guardian might
maintain, in his own name, an action in a case like the one
now under consideration.   The case of *McDuffie* v. *McIn-
tyre,* 11 S. C., 551, decided since the adoption of the Code of
Procedure, has also been cited by counsel for appellant.   In
that case real estate belonging to the wards had been sold
under the order of the Court of Equity, and a bond which
represented a portion of the proceeds of such sale had been
turned over to their guardian.   This bond, the guardian
undertook to sell to a third person, and it was held that the
guardian had no power to make such sale.   How that de-
cision, the correctness of which is not questioned, can affect
the question which we are now called upon to determine, it is
not easy to perceive.   Here no question is presented as to

232               BARNWELL v. MARION.

the right of a guardian to sell, either specific chattels or choses in action belonging to his ward's estate; and the only question here presented is whether a guardian, to whom a bond, secured by a mortgage of real estate, has been assigned *eo nomine,* can maintain an action for the foreclosure of such mortgage in his own name, without joining with him his wards; and this, as we have seen, the guardian is expressly authorized to do by the provisions of the Code of Procedure, as construed by the cases hereinabove cited. In addition, we have two other cases, decided since the adoption of the Code, which, though not precisely in point, do, by analogy, support the view which we have adopted. In *Ashley* v. *Holman,* 15 S. C., 97, it was held that, if the committee of a lunatic becomes chargeable for profits made by the labor of the lunatic, and then die, the succeeding committee may maintain an action against the executors of the deceased committee for an account of such profits, in his own name, without joining the lunatic as a party. So in *Cathcart* v. *Sugenheimer,* 18 S. C., 123, it was held that a lunatic was not a necessary party to an action brought by his committee where equitable relief is sought in the Court of Chancery, for the benefit of the lunatic. Now, if it be true, as was said by Butler, J., in *McCreight* v. *Aiken,* 3 Hill, 337, and repeated by McGowan, J., in *Cathcart* v. *Sugenheimer, supra,* that "the legal relation of a committee to a lunatic is analogous to that of guardian and ward," then these two cases do, by analogy, support our view. We have not deemed it necessary to go into any examination of the cases cited from other States, for two reasons: 1st. Because we think our own decisions, which are authoritative, are quite sufficient for the determination of the question which we are called upon to decide. 2d. Because in some of the States from which cases have been cited, the nature of a mortgage has not been changed by statute, as it has been here by our statute of 1791, as explained in *Simons* v. *Bryce,* 10 S. C., at page 368, *et seq.* Hence in those States, which still recognize a mortgage of real estate as a conveyance of the legal

title, it is not difficult to understand, where foreclosure of a mortgage of real estate made to a ward is sought, why it is thought necessary that the ward should be a party to an action for foreclosure for the purpose of divesting him of the legal title, which had been vested in him by the mortgage. Here, however, where a mortgage of real estate does not operate as a conveyance of the legal title, no such necessity can arise.

The only remaining inquiry is that presented by the third question above stated, to wit: whether the absence of any allegation in the complaint that a demand, *"in writing,"* has been made by the assignee of a majority in interest of the bonds secured by the mortgage, that this action should be brought, is fatal on demurrer, based upon the ground that the facts stated in the complaint are not sufficient to constitute a cause of action. Without stopping to inquire whether a demand, in writing, is one of the facts necessary to constitute *"a cause of action,"* and assuming, without deciding, for the purposes of this inquiry only, that it is, we think it clear that no such allegation was necessary. . The terms of the covenant in the mortgage, as set forth in the 6th paragraph of the complaint, as copied above, show conclusively that such covenant contains two provisions as to bringing the suit—the first permissive, and the second imperative. The suit *may* be brought, "in case of default in the payment of the principal or interest of said bonds, or any part thereof." The suit *must* be brought upon the demand, in writing, of the assignees of a majority in interest of the bonds. It is clear, therefore, that no demand, in writing, was necessary to *authorize* the bringing of the action. Besides, even if such demand were necessary, it was sufficiently complied with by the bringing of the action in the name of *all* of the assignees; and this, as we understand, was conceded by appellant's counsel, provided the Court should conclude that the guardian had the right to bring the action in his own name, without joining with him his wards. But whether conceded or not, we think it was

sufficient.    There was no error, therefore, in overruling the demurrers.

The judgment of this Court is, that the order overruling both of the demurrers be affirmed, and the case remanded to the Circuit Court for such further proceedings as may be necessary.